UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KRISTI ANN WALTER, an individual,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>STATE OF NEVADA, BOARD OF PSYCHOLOGICAL EXAMINERS, a governmental entity; MORGAN GLEICH, in her capacity as Executive Director, *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. 2:20-cv-00651-KJD-VCF<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

　　　　Before the Court is Defendants' Motion for Summary Judgment (ECF #35). Plaintiff responded in opposition (ECF #39) and Defendants replied (ECF #40).

　　I.　　Factual and Procedural Background

　　　　In 2017, Defendant Board of Psychological Examiners ("Board"), received two complaints against Plaintiff Kristi Ann Walter ("Walter") from two different individuals. (ECF #35, at 2). To represent her in her defense against allegations in front of the Board, Walter retained attorney Tracy Singh ("Singh"), who sent the Board notice of her involvement on November 20, 2017. (ECF #35-1). In November 2018, Walter and the Board signed a stipulated settlement agreement to settle the two complaints against Walter. (ECF #35-4). Singh played a part in negotiating the language of the settlement agreement. (ECF #35-3). At a meeting on November 9, 2018, the Board accepted and approved the settlement agreement with Walter. (ECF #35, at 3). The agreement required Walter to undergo an evaluation with "a medical doctor and/or a neuropsychologist as approved by the Board." (ECF #35-4, at 4). Walter was instead examined by Dr. Daniel T. Shiode ("Dr. Shiode"), who was not a medical doctor or neuropsychologist. (ECF #23, at 9). The settlement agreement indicated that by signing it,

1  Walter is "waiving her right to a hearing at which Respondent may present evidence in her
2  defense and to be represented by counsel, to judicial review of any adverse decision by the
3  Board, and to present a defense to the Board whish has had no prior familiarity with the instant
4  matter." (ECF #35-4, at 6).

In April 2019, Walter, again with the assistance of Singh, signed a Voluntary Surrender in Lieu of Other Disciplinary Action. (ECF #35-5). The Board's acceptance of this document would vacate the stipulated settlement agreement that the parties signed in 2018. Id. at 2. The Board accepted the voluntary surrender and Walter surrendered her license. Id. at 7. Walter now alleges that the entire investigation into her behavior was a sham, as the Board took a year to investigate and used "bogus claims to purposely harm Plaintiff" out of spite and malice towards her. (ECF #23, at 15). Walter also alleges that the investigation would never have occurred if she were a man, claiming that a male psychologist's similar investigation was terminated after the police decided not to pursue criminal charges. Id. at 13. Walter alleges that "despite the abundant evidence refuting the likelihood that the preposterous claim" against her was true, Defendants accepted a "naked assertion" to punish Walter and strip her of her license and livelihood. Id.

Walter's complaint brought two causes of action: a § 1983 claim against all defendants for violating her civil rights, including, but not limited to, her rights under NRS Chapter 49, NRS Chapter 641, NAC Chapter 641, the Health Insurance Portability and Accountability Act ("HIPAA"), and 42 U.S.C. § 1983; and an abuse of process claim for having ulterior motives in bringing the investigation against Walter which led to the signing of the settlement agreement and surrender of her license. Id. at 16–18. Walter asks the Court for punitive and special damages, both in the amount of $1 million, as well as other damages, costs, and reinstatement of her license. Id. at 18–19.

II. Legal Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

1  The moving party bears the initial burden of showing the absence of a genuine issue of material
2  fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth
3  specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v.
4  Zenith Radio Corp., 475 U.S. 574, 587 (1986).
5  　　　All justifiable inferences must be viewed in the light most favorable to the nonmoving
6  party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the
7  mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by
8  affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine
9  issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).
10 　　　III.　　Analysis
11 　　　The Court construes a *pro se* motion liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007)
12 ("A document filed *pro se* is to be liberally construed . . ."). However, the Court "lacks the power
13 to act as a party's lawyer, even for *pro se* litigants." Bias v. Moynihan, 508 F.3d 1212, 1219 (9th
14 Cir. 2007). Each cause of action is analyzed accordingly.
15 　　　A.　Section 1983 Claim
16 　　　Walter's first cause of action is a § 1983 claim, alleging that Defendants violated her
17 statutory rights created in NRS Chapter 49, NRS Chapter 641, NAC Chapter 641, HIPAA, and
18 42 U.S.C. § 1983. "Section 1983 does not create substantive rights but merely is a device for
19 enforcing certain Constitutional provisions or federal statutes." Leff v. Clark Cnty. School Dist.,
20 No. 2:15-cv-001155-RFB-GWF, 2018 WL 4705520, at *9 (D. Nev. Sep. 30, 2018). Because
21 § 1983 covers only federal statutory rights, Walter's claims for violations of her rights outlined
22 in the Nevada Revised Statutes and the Nevada Administrative Code are not covered.
23 Additionally, "HIPAA does not provide a private right of action for enforcement of the rights it
24 guarantees." Howard v. NaphCare, No. 2:17-cv-02345-JAD-NJK, 2018 WL 6028693, at *2 (D.
25 Nev. Nov. 16, 2018). Because there is no private right of action, a "personal HIPAA claim is not
26 cognizable under 42 U.S.C. § 1983 or any other law." Id. The statutory violations identified in
27 Walter's complaint are not covered by § 1983. The Court, liberally construing the complaint,
28 recognizes that Walter may also have pleaded a § 1983 violation of her constitutional right to due

1  process. As such, it will analyze the claim in that light.

2      "The elements of a Section 1983 claim are: (1) violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting 'under color of state law.'" Leff, 2018 WL 4705520 at *9 (quoting Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991)). A procedural due process claim "hinges on proof of two elements: (1) a protect[ed] liberty or property interest . . . and (2) a denial of adequate procedural protections." Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 716 (9th Cir. 2011) (quoting Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir. 1998)). The Supreme Court has recognized that due process "has never been, and perhaps can never be, precisely defined . . . [rather it] expresses the requirement of 'fundamental fairness.'" Lassiter v. Dep't of Social Servs., 452 U.S. 18, 24 (1981). Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895 (1961). Instead, it is "flexible and calls for such procedural protections as the particular situation demands." Morrisey v. Brewer, 408 U.S. 471, 481 (1972). Walter argues that she was denied a proper investigation and a hearing on the matter.

    The Board received two complaints against Walter. It investigated those complaints and resolved them through a stipulated settlement agreement. In the settlement agreement, which Walter signed with the assistance of counsel, Walter waived her right to a hearing. After signing the settlement agreement, Walter decided it would be more beneficial to her to voluntarily surrender her license, in lieu of other punishment. With the assistance of counsel, Walter and the Board agreed to vacate the previously signed settlement agreement and allow Walter to surrender her license. There is no evidence of fundamental unfairness or the denial of adequate procedural protections. Walter now alleges that the investigation was a sham, that the complaints against her would not have been pursued if she were a man, and that there was no evidence supporting the allegations of the complaint. However, Walter signed the agreement, waiving her right to proceed to a hearing and present her arguments and evidence. In the agreement, Walter admitted that the Board's investigation "revealed cause to move forward." (ECF #35-4, at 2). She could have proceeded to a hearing but agreed to settle with the Board instead. Walter then waived her

1  right to a hearing and to present evidence again when she voluntarily surrendered her license.
2  She has not provided evidence that the Board violated her due process rights.
3    The same holds true for Walter's argument that Dr. Shiode was not qualified to do her
4  evaluation. According to the terms of the settlement agreement, Walter agreed to "complete a
5  comprehensive evaluation by a medical doctor and/or a neuropsychologist." Id. at 4. Dr. Shiode
6  was neither a medical doctor nor neuropsychologist, but he was chosen by the Board to complete
7  Walter's evaluation. Again, neither Walter nor her counsel objected to the evaluation being
8  completed by Dr. Shiode. The Board indicated that the specific language of the settlement
9  agreement was not ideal, but that the Board found that Dr. Shiode had "the necessary
10 qualifications to complete [the] evaluation." (ECF #35-7, at 2). Additionally, Walter requested
11 that the Board vacate the agreement anyway, so whether Dr. Shiode violated the terms of the
12 agreement is irrelevant. Alleging that an evaluation by Dr. Shiode, who the Board found
13 qualified to perform such evaluations, violated the terms of the settlement agreement is
14 insufficient to show a due process violation.
15   Walter argues that the entire process was a sham and that the Board intentionally and
16 with malice prosecuted her differently than it would have prosecuted Walter's colleagues.
17 However, Walter provides no evidence to support these facts besides an example that one other
18 person's complaint was dismissed after police decided not to press charges. Walter was
19 represented by counsel during the investigation, and with that assistance, made strategic moves
20 that helped her avoid additional punishment and waived her right to a hearing. Walter received
21 the procedural protections demanded by the particular situation as she negotiated the voluntary
22 surrender of her license with the help of her attorney. A jury could not find a due process
23 violation and summary judgment is granted to Defendants.

    B. Abuse of Process Claim

25   Walter's second cause of action is an abuse of process claim. To allege a tort claim for
26 abuse of process, "a plaintiff must establish two elements: (1) the defendant had an ulterior
27 purpose in the underlying lawsuit other than resolving a legal dispute, and (2) the defendant
28 willfully and improperly used the legal process to accomplish that purpose." J&J Sports

Productions, Inc. v. Moreno, No. 2:17-cv-00680-MMD-NJK, 2018 WL 4512048, at *4 (D. Nev. Sep. 20, 2018). The complaint alleges that the Board had ulterior motives in bringing forth the complaint against Walter and used the complaint to force Plaintiff into signing the settlement agreement. Plaintiff has not provided any evidence to support this assertion. Walter's allegation is that the Board pretended to investigate the complaints for one year and waited until Walter became desperate enough to settle, but there is no evidence to support this allegation. Both Walter and the Board were represented by counsel when the agreement was signed, indicating a balance in bargaining power. Walter then vacated the settlement agreement and surrendered her license instead. That choice was hers, and she made it with the assistance of counsel. Walter has not provided evidence of an ulterior motive or willful or improper use of the legal system.

At the summary judgment stage, when the non-moving party bears the burden of proof, "the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case." Deutsche Bank Nat'l Trust Co. v. SFR Investments Pool 1, LLC, 382 F.Supp.3d 1114, 1118 (D. Nev. 2019). The Board has provided evidence that Walter cannot establish the elements of her claims and demonstrated that Walter has failed to make a showing sufficient to satisfy the essential elements of her claims. Therefore, the Court grants summary judgment to Defendants.

IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (ECF #35) is **GRANTED**.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss (ECF #29) is **DENIED as moot**.

Dated this 17th day of March, 2022.

_____
Kent J. Dawson
United States District Judge